**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

MAGNUM PHOTOS INTERNATIONAL, INC.,

                                   Plaintiff,

              - against -

HOUK GALLERY INC.
and EDWYNN HOUK GALLERY et al.,

                           Defendants.

No. 16-CV-7030 (VSB)

---

**PLAINTIFF MAGNUM PHOTOS' MEMORANDUM OF LAW**

**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BRESSLER LAW PLLC

Joshua R. Bressler (JB8780)
3 West 35th Street, 9th Floor
New York, NY 10001
Tel: (917) 969-4343
Fax: (917) 591-7111
Email: jrb@jrblaw.com

*Counsel for Plaintiff*
*Magnum Photos International, Inc.*

# TABLE OF CONTENTS

**BACKGROUND** ....................................................................................................... 1

**ARGUMENT** ............................................................................................................. 2

   **I)**    **DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT** ......................... 2

   **II)**   **DEFENDANTS' UNAUTHORIZED USES OF THE IMAGES ARE NOT FAIR USE.** 4

      1)   The purpose and character of Defendants' unauthorized uses is commercial ............................ 5

      2)   The nature of the copyrighted works are creative .......................................................... 7

      3)   Amount and substantiality of portion used ............................................................... 8

      4)   Defendants' unauthorized uses had a detrimental effect on the potential market for the images ....................................................................................... 9

         A) Defendants have submitted no evidence to overcome the presumption that their commercial use had an effect on the potential market. ........................................... 9

         B) The Defendants' unauthorized uses had an adverse impact on the potential market for the works. ....................................................................................... 9

         C) The Defendants' unauthorized uses were not transformative. ..................................... 11

         D) Defendants' practice of conducting unlicensed exhibitions is not industry custom. ....................................................................................... 14

         E) Defendants' economic losses incurred do not make their unauthorized exhibitions and uses fair use ............................................................................. 16

         F) Even if Defendants' unauthorized uses had enhanced the images' value, which they did not, such fact would be irrelevant to a fair use analysis. ..................................... 16

   **III)**  **MAGNUM PHOTOS' OBJECTION TO DEFENDANTS' SUBMISSION OF THIRD PARTY AFFIDAVITS** .................................................................................... 18

**CONCLUSION** ....................................................................................................... 19

# TABLE OF AUTHORITIES

## Statutes

F.R.C.P. 56 …………………………………………………………………………………………...1

17 U.S.C. §107 ………………………………………………………………………………passim

## Cases

*A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)....................................................14, 17

*Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995)...................................................................................3

*American Geophysical Union v. Texaco, Inc.,* 60 F.3d 913 (2d. Cir. 1994)............................7, 15

*American Geophysical Union v. Texaco, Inc.*, 802 F. Supp. 1 (S.D.N.Y. 1992)**……………………………………………...8**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................................................................................................................................2

*AP v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013) ............................... 12

*Arista Records LLC v. Myxer Inc.*, LEXIS 109668 (C.D. Cal. 2011)............................................. 17

*Author Guild*, 804 F.3d 202 (2d. Cir. 2015)....................................................................................... 13

*Basquiat v. Baghoomian*, 1991 U.S. Dist. LEXIS 16647, Copy. L. Rep. (CCH) P26, 824 (S.D.N.Y. 1991)................................................................................................................. 3, 4, 16

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d. Cir. 2006) ........................8

*Blanch v. Koons*, 467 F.3d 244 (2d. Cir. 2006) ....................................................................................8

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)...................................................5, 9, 11, 17

*Conde Nast Publ'ns v. Vogue Sch. Of Fashion Modelling, Inc.*, 105 F. Supp. 325 (S.D.N.Y. 1952) ........................................................................................................................................ 16

*Consumers Union of the United States, Inc. v. New Regina Corp.*, 664 F. Supp. 753, 763 (S.D.N.Y. 1987).........................................................................................................................3, 9

*Designer Skin, LLC v. S & L Vitamins, Inc.*, 560 F. Supp. 2d 811 (D. Ariz. 2008)................... 12

*Elec. & Telecomms. Research Inst. v. Acacia Research Grp., LLC*, 2017 U.S. Dist. LEXIS 84004, 2017 WL 2389699 (S.D.N.Y. 2017)...........................................................................2, 3

*Fay v. Oxford Health Plan,* 287 F.3d 96, 103 (2d Cir. 2002) ...........................................................2

*Graham v. Prince*, 2017 U.S. Dist. LEXIS 111521, 123 U.S.P.Q.2D (BNA) 1724, Copy. L. Rep. (CCH) P31, 122, 2017 WL 3037535 (S.D.N.Y. 2017)...........................................4, 6, 7

*Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539 (1985)......................................3, 5

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th. Cir. 2003)....................................................11, 12, 13

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)..............................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .....................................3

*MCA, Inc. V. Wilson*, 677 F.2d 180 (2d. Cir. 1981)............................................................................6

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) .................................................. 12

*Morris v. Guetta* (LEXIS 15556, Copy. L. Rep. (CCH) P30, 381, 2013 WL 440127 (C.D. Cal 2013) ........................................................................................................................................ 12

*Perfect 10, Inc. v. Amazon.com, Inc.* 508 F.3d 1146(9th. Cir. 2007)....................................11, 12, 13

*Rogers v. Koons*, 960 F.2d 301 (2d. Cir. 1992) .............................................................................6, 14

*Rosen v. eBay, Inc.*, No. CV 13-6801 MWF EX, 2015 WL 1600081 (C.D. Cal. 2015)........... 13

*Summit Entm't, LLC v. B.B. Dakota, Inc.* 2011 U.S. Dist. LEXIS 151582, Copy. L. Rep. (CCH) P30, 163 (C.D. Cal. 2011)...........................................................................................5

*Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138 (W.D. Mo.  2010) ...................................... 5, 8, 11

*The T.J. Hooper*, 60 F.2d 737 (2d Cir. 1932) ........................................................................ 15

*United States v. ASCAP*, 599 F. Supp. 2d 415 (S.D.N.Y. 2009) ......................................... 12

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191 (3d Cir. 2003) ............... 12

## **<u>Treatises</u>**

Goldstein on Copyright §12.1.2 ………………………………………………………………11

Plaintiff Magnum Photos International, Inc. ("Magnum Photos") hereby submits this memorandum of law in opposition to Defendants' motion for summary judgment on the issue of copyright fair use.

## BACKGROUND

Defendants admit that as part of their ordinary course commercial endeavors, they coordinated and conducted without Plaintiff's consent two gallery exhibitions comprised of the Henri Cartier-Bresson photographic images at issue in this case, including their reproduction, public display and distribution of unauthorized digital copies of such images via their website. Those unauthorized uses had an adverse effect on the value of and market for the images and Magnum Photos' licensed exhibitions thereof. Defendants argue that art galleries routinely engage in the rampant, unauthorized uses of artists' works for commercial gain as a matter of industry custom, but this is not so. Defendants complain that they lost money conducting their failed, unauthorized exhibitions, which denied Magnum Photos the right and ability to administer and guide those exhibitions appropriately.

Defendants argue that fair use exempts their conduct from liability to Magnum Photos for copyright infringement but cite no analogous case holding such gallery uses to be non-infringing. As Magnum Photos demonstrates below, and as at least one other court addressing highly analogous facts has held, Defendants' unauthorized uses do not constitute fair use. In any case, because fair use is a fact-intensive analysis, and because Defendants as the summary judgment movants must but do not carry the burden under Fed. R. Civ. P. 56, Defendants' motion seeking judgment that their unauthorized uses are exempt from copyright infringement as fair use must be denied. Indeed, if any judgment can be rendered on the fair use issue now, it is a judgment that the unauthorized uses constitute infringement.

## ARGUMENT

### I)   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is appropriate only if the moving party shows that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law". *See also Fay v. Oxford Health Plan,* 287 F.3d 96, 103 (2d Cir. 2002), "[s]ummary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

"[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Therefore, if there is any chance that a reasonable jury could find in favor of the non-moving party, the issue is genuine and the motion for summary judgment should be denied.

A fact is considered to be a "material fact" when it "might affect the outcome of the suit under the governing law". *Id.* Therefore, the mere existence of a factual dispute is enough to deny summary judgment as long as the fact in dispute might be (and not necessarily is) outcome determinative.

The initial burden of proof is on the moving party. *See Elec. & Telecomms. Research Inst. v. Acacia Research Grp., LLC*, 2017 U.S. Dist. LEXIS 84004, 2017 WL 2389699 (S.D.N.Y. 2017):

> On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Therefore, the non-moving party has the burden to prove that there is a genuine issue of material fact only if the moving party satisfies its initial burden of proof. In addition, as long as the non-moving party shows that there is at least one genuine issue of material fact and that a reasonable jury could find in his favor, summary judgment must be denied.

Any facts and inferences are viewed in favor of the non-moving party. Indeed, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). » *See Elec. & Telecomms. Research Inst. v. Acacia Research Grp., LLC*, 2017 U.S. Dist. LEXIS 84004, 2017 WL 2389699 (S.D.N.Y. 2017).

A Court's assessment of a copyright fair use defense must make a factual determination on each of the four fair use factors. *See Consumers Union of the United States, Inc. v. New Regina Corp.*, 664 F. Supp. 753, 763 (S.D.N.Y. 1987): "Defendants then will prevail on this motion for summary judgment only if (1) no factual issues remain to be resolved on any of the four factors necessary for the Court to make a determination of fair use and (2) after assessing and weighing the four fair use factors it is clear that defendants are entitled to the defense as a matter of law." *See also Basquiat v. Baghoomian*, 1991 U.S. Dist. LEXIS 16647, Copy. L. Rep. (CCH) P26, 824 (S.D.N.Y. 1991):

> The question of fair use is a mixed question of fact and law. *Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 560, 105 S. Ct. 2218, 2230 (1985). If sufficient facts are established for each of the four statutory factors, a court may determine as a matter of law whether the allegedly infringing conduct constitutes fair use. *Id.* However, where, as

here, numerous issues of material fact remain in dispute, summary judgment would be inappropriate on the infringement issue.

In *Basquiat*, under circumstances similar to those presented here, a gallery owner published a book in which he included some photographs of copyrighted artwork without asking for the artist's permission. The gallery owner claimed fair use, arguing that the book was meant as a catalogue of the exhibition displaying the artwork at issue. The court considered that since a number of factual questions remained, in particular the effect of the use on the potential market for or value of the work, the court could not rule as a matter of law that the publishing of the images in connection with the artwork displayed at the exhibition without the artist's consent was fair use. In addition, "the affirmative defense of fair use requires the Court to engage in a fact-sensitive inquiry", which is not best completed at the stage of summary judgment. *See Graham v. Prince*, 2017 U.S. Dist. LEXIS 111521, 123 U.S.P.Q.2D (BNA) 1724, Copy. L. Rep. (CCH) P31, 122, 2017 WL 3037535 (S.D.N.Y. 2017).

Each of the four fair use factors is outcome determinative, since they could all lead to a finding of fair use, and therefore constitute issues of "material fact".

Since evidence and inferences must be viewed in a light most favorable to the non-moving party, and since there at least exist genuine issues of material fact that could lead a reasonable jury to find that Defendants' use is not fair use issue, summary judgment must be denied.

## II)   DEFENDANTS' UNAUTHORIZED USES OF THE IMAGES ARE NOT FAIR USE.

The copyright fair use exemption is available only for unauthorized uses that are "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for

classroom use), scholarship, or research". In determining whether a use is fair, four factors are to be considered:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*See* 17 U.S.C. §107. No one factor is determinative. The four statutory factors should not "be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994). However, "[t]his last factor is undoubtedly the single most important element of fair use". *See Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539 (1985).

As Plaintiff demonstrates below, Defendants' unauthorized uses were not fair use.

## 1) <u>The purpose and character of Defendants' unauthorized uses is commercial</u>

Defendants admit that the purpose and character of their unauthorized uses are commercial – namely, to promote the gallery and its sale of prints featuring the images at issue. Edwynn Houk Declaration ("<u>Houk Dec.</u>") ¶ 8. Such use weighs heavily against a finding of fair use.

In *Teter v. Glass Onion, Inc.,* 723 F. Supp. 2d 1138 (W.D. Mo. 2010), where the defendants also posted digital copies of some artwork exhibited at the gallery, the court pointed out that the use was purely "informative and promotional", in order to advertise the work at the gallery. The court concluded that this was therefore "a basic commercial purpose and suggests against a finding of fair use."

In *Summit Entm't, LLC v. B.B. Dakota, Inc.* 2011 U.S. Dist. LEXIS 151582, Copy. L. Rep. (CCH) P30, 163 (C.D. Cal. 2011), the court rejected fair use on the basis that the use of

the image was "clearly commercial" and "promotional artwork developed to market the motion picture":

> BB's interpretation of Kelly, and of fair use doctrine more generally, is extraordinarily wooden — at best. Even if a standard fair use analysis was required, BB's fair use defense fails easily. First, its use of the image was clearly commercial, regardless of whether the actual image was itself being sold. Unlike in Kelly, the Bella image is promotional artwork developed to market the motion picture, which BB misappropriated to serve precisely the same purpose in the sale of its garments. Moreover, in Kelly, the transformative use provided a public service, whereas here the artwork was used purely for private gain. Second, the image itself was not necessary to "inform customers that Defendant's jacket was the same jacket as the one worn ... in the movie," as BB impliedly admits in its reliance on the "As seen in the Twilight movie" language. Third, use of the entire image was in no way necessary to conveying the message BB alleges it intended to send consumers. Fourth, and finally, BB has clearly benefitted commercially from its use of the Bella image, deriving profits a significant portion of which would have gone to Summit had proper licensing agreements been in place.

In *Graham v. Prince*, 2017 U.S. Dist. LEXIS 111521, 123 U.S.P.Q.2D (BNA) 1724, Copy. L. Rep. (CCH) P31, 122, 2017 WL 3037535 (S.D.N.Y. 2017), denying summary judgment on a fair use defense, the court pointed out:

> In this case, Graham has not only alleged that defendants directly profited from the sale of *Untitled*, but has also claimed that Prince indirectly profited by using Graham's photograph in "promotional and advertising materials" for other *New Portraits* works and exhibitions, and that Gagosian Gallery and Gagosian "benefited financially from the publicity and notoriety" they received from the *New Portraits* exhibition, in which *Untitled* was included.

"The first factor . . . asks whether the original was copied in good faith to benefit the public or primarily for the commercial interests of the infringer." *See Rogers v. Koons*, 960 F.2d 301 (2d. Cir. 1992); *see also MCA, Inc. V. Wilson*, 677 F.2 180 (2d. Cir. 1981). In our case, even the information of the public was ultimately for promotional purposes in order to make more sales, and therefore for private commercial gain. "[C]ourts will not sustain a claimed defense of fair use when the secondary use can fairly be characterized as a form of "commercial exploitation," *i.e.*, when the copier directly and exclusively acquires

conspicuous financial rewards from its use of the copyrighted material." *American Geophysical Union v. Texaco, Inc.,* 60 F.3d 913, 922 (2d. Cir. 1994). Even though the court found that Texaco's use did not amount to a commercial exploitation, the court said "we need not ignore the for profit nature of Texaco's enterprise" and concluded on the commercial use factor that "it is not obvious why it is fair for Texaco to avoid having to pay at least some price to copyright holders for the right to photocopy the original articles." *Id*. Despite the lack of clear "commercial exploitation", the court still ruled overall against a finding of fair use because of the for-profit nature of the use.

Defendants reproduced and publicly displayed on their website all of the Images. The number of uses were excessive and unnecessary to promote the exhibitions. Moreover, Defendants' unauthorized digital reproductions and public display of the Images on their website went well beyond what even could be argued as reasonably necessary to promote sale of the prints represented by the Images. Reproduction and continued public display through late 2013 of images exhibited and offered for sale long ago as part of the 2009 New York exhibition are not necessary to promote images exhibited at the 2013 Zurich exhibition. Just as in *Graham*, the continued promotion of the Defendants' 2009 New York exhibition in 2013 promoted the *gallery*, solely to buttress Defendants' own reputation and standing, and not to promote sale of prints no longer being exhibited.

Because Defendants' unauthorized uses were commercial, this factor weighs heavily against a finding of fair use.

### 2)    <u>The nature of the copyrighted works are creative</u>

Henri Cartier-Bresson (1908-2004) was a renowned photographer who revolutionized photography as an art form and also as a form of journalism. Mr. Cartier-Bresson remains one of the most celebrated photojournalists in history, often recognized as its father. Crooks Aff. ¶

2. Regarding this factor, courts look at whether the work is creative and whether it is published. *See Blanch v. Koons*, 467 F.3d 244 (2d. Cir. 2006):

> Two types of distinctions as to the nature of the copyrighted work have emerged that have figured in the decisions evaluating the second factor: (1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower.

Each of the images used by Defendants is a highly creative work, and the product of artistic and expressive efforts. Defendants do not dispute these facts. "[T]he creative nature of artistic images typically weighs in favor of the copyright holder." *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006). Magnum Photos also closely controls the licensing and monitors the use of these images. Crooks Aff. ¶¶ 3, 10-12. As such, this factor also weighs heavily against a finding of fair use. *See Texaco,* 802 F. Supp. at  1 (S.D.N.Y. 1992).

### 3) <u>Amount and substantiality of portion used</u>

Defendants do not dispute that they used on their website the *entirety* of *every* image at issue in this action. Whatever the resolution settings used by Defendants to create their unauthorized inferior digital copies, they do not mitigate Defendants' wholesale taking of all of the Images' protected expression. In *Teter*, when the defendant gallery GOI posted on its website mere thumbnail images of some of the works in its exhibition, the court found that "GOI does not curtail the amount or portion of the copyrighted works in use, as its thumbnail images are complete photographs of the paintings." *Teter*, 723 F. Supp. 2d at 1153. As such, this factor also weighs heavily against a finding of fair use.

### 4)      **Defendants' unauthorized uses had a detrimental effect on the potential market for the images**

A) *Defendants have submitted no evidence to overcome the presumption that their commercial use had an effect on the potential market.*

"If the defendant's use is commercial, the defendant continues to bear the burden of proving that the use does not reduce the market for the plaintiff's work." (Goldstein on Copyright §12.1.2). "The resolution of those effects presents factual questions inappropriate to resolve on a motion for summary judgment. In the absence of any evidence on these issues and based upon the presumption of harm that results from commercial use, the Court must weigh this fourth factor in favor of plaintiff." *See Consumers Union of the United States, Inc. v. New Regina Corp.,* 664 F. Supp. 753, 763 (S.D.N.Y. 1987). Goldstein also notes that "if the defendant's work exactly copies the plaintiff's work and does not transform it, market harm under the fourth factor will be presumed, at least where the defendant's use is a commercial one." (Citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569) (*See* Goldstein on Copyright §12.1.2).

As Defendants admit that their unauthorized uses here are commercial, the uses are presumed to harm the potential market.

B) *The Defendants' unauthorized uses had an adverse impact on the potential market for the works.*

In the ordinary course of Magnum Photos' business administering exclusive rights for owners of photographs, Magnum Photos routinely licenses galleries for their conduct of exhibitions and their reproductions and display of the works exhibited. Crooks Aff. ¶¶ 10, 11.

Magnum considers the particulars of each exhibition, such as which images will be used and displayed, how such images will be arranged, whether certain images must be

excluded, to represent and convey the intended message and theme to the audience. Magnum also considers whether the proposed uses will enhance or detract from the perceived value of the images being incorporated, and whether works by other artists may be exhibited with the photographer's work. Magnum also provides approval for use of Magnum Photos' name and/or the photographer's name to promote and conduct the exhibition. Magnum charges a license fee in connection with its grant of such rights and its work in this regard. (Crooks Aff. ¶ 9).

Magnum plays an important role in the curation of exhibitions and in the way the work is communicated to the public. Indeed, during his lifetime, Mr. Cartier-Bresson controlled and approved all curations "because it is part of the narrative of how his work is communicated to the public." (Crooks Aff. ¶ 7) As the exclusive licensee of copyrights for Mr. Cartier-Bresson's images, Magnum's role in approving the curation in order to communicate the narrative of the work to the public is the same as the role of the photographer himself during his lifetime. (Crooks Aff. ¶ 8).

In contrast, Defendants' inclusion of the Images as part of their unauthorized exhibitions was driven by a sole commercial criterion: whether third party print owners had engaged them to try to sell their owned prints. Houk Dec. ¶¶ 7, 8 and 11. Defendants created copies of the Images and also created derivative works based thereon – including the assembled exhibitions themselves – all without Magnum Photos' permission or input, depriving Magnum Photos of its right and ability to administer how these images would be combined, arranged and exhibited, and also of its licensing fees earned for doing so. Indeed, the images as reproduced on Defendants' website were "piled together, crowded next to each other like random postage stamps, without their titles or any other information, and without any order or explanation for why they were arranged, hardly in any presentation worthy or dignifying of Mr. Cartier-Bresson's work." Crooks Aff. ¶18 and its Exhibit A.

10

Magnum commonly requests that any unauthorized uses of the images it administers, in particular for promotional purposes, be stopped. Magnum also has taken action against other galleries' unauthorized uses of its licensors' works analogous to the unauthorized conduct that Defendants have committed here. Crooks Aff. ¶ 12.

### C) *The Defendants' unauthorized uses were not transformative.*

In *Campbell,* 510 U.S. at 579, the Supreme Court ruled that the issue is whether the unauthorized use "merely supersedes the object of the original creation, or instead adds something new, with a further purpose or different character, with new expression, meaning or message."

In *Teter,* 723 F. Supp. 2d at 1153, the Court held that the defendant gallery's thumbnail images of the plaintiff artist's works reproduced and displayed on the gallery's website were "not transformative, as they do not alter the original work with new expression, meaning or message". (Internal quotations omitted). "The Court concludes the fair use defense would be misapplied and inconsistent with its purpose". *Id* at 1154.

The cases on which Defendants rely to assert that their own unauthorized uses are transformative are materially distinguishable on their facts.

Defendants compare their unauthorized images to the thumbnail images determined in *Perfect 10* and *Kelly* to be fair use. But Defendants' uses did not provide the Internet search engine tool feature crucial to those fair use determinations, and Defendants do not argue or prove otherwise. In *Perfect 10*, 508 F.3d 1146 (9th. Cir. 2007) and *Kelly*, 336 F.3d 811 (9th. Cir. 2003), the thumbnail images were used as "a pointer directing a user to a source of information" (*Perfect 10*, 508 F.3d at 1165).

The *Teter* court specifically referred to *Perfect 10*, noting that "finding operator's display of thumbnail images of copyright owner's photographs was fair use because thumbnails were tools that enabled users to locate full-sized images". The court stated that

"[u]nlike the scenario where a general internet search engine "transforms the [thumbnail] image into a pointer directing a user to a source of information," GOI's use of the images is limited to an informative and promotional function on the Gallery's website- to show customers the Teter works available at the Gallery." The same is true of Defendants' unauthorized website uses.

Indeed, many courts have distinguished and refused to extend the *Perfect 10* and *Kelly* decisions beyond their particular application to Internet search engine functionality. *See AP v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013); *Morris v. Guetta*, LEXIS 15556, Copy. L. Rep. (CCH) P30, 381, 2013 WL 440127 (C.D. Cal 2013); *Designer Skin, LLC v. S & L Vitamins, Inc.,* 560 F. Supp. 2d 811 (D. Ariz. 2008) (no search engine function and therefore no transformative use). *See also Monge v. Maya Magazines, Inc.,* 688 F.3d 1164 (9th Cir. 2012) ("newsworthiness" was not a new function in the same way as the search engine function in *Perfect 10*: "unlike the thumbnail images at issue in *Perfect 10*, Maya left the inherent character of the images unchanged."). *See also United States v. ASCAP*, 599 F. Supp. 2d 415, at 426 (S.D.N.Y. 2009), where the court emphasized that the new function in *Kelly* was not for advertising but the search engine:

> Applicant's analogy is misplaced. Applicant mischaracterizes the "thumbnails" in *Kelly* as "advertisements." Unlike applicant's deliberate use of ASCAP music, all of which is copyrighted, to sell applicant's own product, the thumbnails produced by the search engine in *Kelly*, only some of which incidentally were copyrighted images, did not serve to advertise the defendant's product.

*See also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,* 342 F.3d 191 (3d Cir. 2003) (where the court also refused to analogize a database a new search engine function: "In *Kelly*, Arriba Soft Corp.'s search engine located images on other web sites [...]. Video Pipeline's database does not, however, serve the same function as did Arriba Soft's search

engine."). *Perfect 10* and *Kelly* apply only when thumbnail images provide a search engine function not applicable here.

Likewise, at the heart of the *Author Guild*, 804 F.3d 202 (2d. Cir. 2015) decision discussed by Defendants is Google's Internet search engine function. Defendants' uses provided no such function. They merely touted the Defendants' conduct of their exhibitions past and present.

*Rosen v. eBay, Inc.*, No. CV 13-6801 MWF EX, 2015 WL 1600081 (C.D. Cal. 2015) is distinguishable from the instant case for several reasons. First, materially underscoring the Court's decision were the robust safe harbor provisions protecting eBay as an Internet service provider under the Digital Millennium Copyright Act for liability for its end users' content. Notwithstanding that the unauthorized uses at issue here happen to be online, Defendants themselves are the infringers, to which the DMCA safe harbor does not apply. The *Rosen* images were ancillary to the physical magazines being sold via the eBay online auction at issue there, and the *Rosen* images had been licensed by their claimant for inclusion and mass reproduction as part of the magazines in which they appeared. The court also noted that "the pictures are not exact duplications of Rosen's works, but rather […] already altered by the editors of the magazines […]. Rosen has already consented to have his works copied, altered and widely distributed as deemed fit by the editors of the magazines in question, and he has presumably been compensated accordingly." No such conditions apply here. Indeed, the court emphasized that it only was holding that "copies made of a magazine containing depictions of a copyrighted work, for the purpose of selling that magazine under the first sale doctrine, do not violate the Copyright Act under the fair use doctrine. […] The court does not hold […] that the owner of a copyrighted work may, under the fair use doctrine, make copies and publicly display works in any manner desired." (Internal quotation omitted.)

In addition, a mere change in medium for the works at issue (*i.e.*, Defendants' unauthorized conversion of the physical image prints into digital files) is not transformative and thus insufficient to constitute fair use. *See A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th. Cir. 2001): "Courts have been reluctant to find fair use when an original work is merely retransmitted in a different medium."; *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) (sculptor's unauthorized use of a photograph as the basis for his sculpture was not fair use). To the contrary, the change in medium here – from physical print to digital copy – enhances the likelihood that others can and will use the images without Magnum Photos' permission and further damages the images' prestige. Magnum is concerned about the free circulation of various online copies because it tends to cheapen the work. (Crooks Aff. ¶¶ 16, 17, 23) Whereas Magnum specifically resisted the digitization of certain images, Defendants made available online digital copies of 48 photographs that had never been digitized before or that were purposely removed from the digital sphere by Mr. Henri Cartier-Bresson himself or by Fondation HCB over 10 years ago. (Crooks Aff. ¶ 15)

Defendants' unauthorized uses were commercial, not transformative, and not fair use.

### D) *Defendants' practice of conducting unlicensed exhibitions is not industry custom.*

Defendants' practice of conducting unlicensed exhibitions is not industry custom. As shown above, Magnum has a robust exhibition licensing business. (Crooks Aff. ¶¶ 3, 10, 11, 13, 14, 20, 21).

For several reasons, many galleries do routinely seek and obtain from their artists to be featured adequate licenses to promote and conduct their exhibitions. Gallery owners generally understand that unauthorized uses of the featured artists' works such as those committed here by Defendants subject the galleries to the risk of copyright infringement claims. Indeed, as evidenced by the absence of even one Court decision cited by Defendants in their summary

judgment motion papers, the doctrine of fair use has not been decreed to cover the galleries in such context. Moreover, in addition to wanting to eliminate the legal risk of those claims, galleries often want and enjoy the benefits of the featured artists' or their authorized representatives' guidance for and involvement with the planning and conduct of the exhibitions. Hrbek Aff. ¶¶ 3-5, 7. Indeed, the exhibitions' commercial failure about which Defendants now complain is attributable at least in part to Defendants' choice to proceed without Magnum Photos' guidance and involvement. Crooks Aff. ¶ 24; Hrbek Aff. ¶¶ 6, 9-12.

Furthermore, even if galleries' rampant rogue uses of artists' works had been industry custom, which they are not, industry custom does not yield or implore a finding of copyright fair use. The *Texaco* court expressly rejected as "insubstantial" Texaco's "reasonable and customary" unauthorized photocopying infringement argument (*American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 2d. Cir. 1994), and said that "the fact that many authors favor a liberal photocopy practice is completely irrelevant." Id. Just as in *Texaco*, licensing for Defendants' exhibitions was available had they sought it; such licensing is part and parcel of Magnum Photos' usual business as the administrator of the images at issue in this case. Crooks Aff. ¶¶ 21, 22.

In any case, industry custom is no bellwether for legal conduct. *See, e.g., The T.J. Hooper*, 60 F.2d 737 (2d Cir. 1932):

> In most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It may never set its own tests, however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission.

15

### E) *Defendants' economic losses incurred do not make their unauthorized exhibitions and uses fair use.*

Defendants argue that they lost money executing their unauthorized exhibitions; those losses underscore the Defendants' commercial endeavor and intention, albeit unsuccessful. Moreover, those losses do not prove that their unauthorized uses had no effect on Plaintiff's potential market for the images or future exhibitions thereof. Rather, these infringing uses bear on the reputation and perception of the artist and his work and also usurp the artist's opportunities and choices regarding the uses of his or her work. In *Basquiat v. Baghoomian*, 1991 U.S. Dist. LEXIS 16647, Copy. L. Rep. (CCH) P26, 824 (S.D.N.Y. 1991), the Court ruled that "[a]lthough it appears that Baghoomian has not profited from sales of the Basquiat book, that net loss is irrelevant to the potential impact the existence of such a book may have on the estate's ability to prepare a similar book of its own." Likewise, in *Conde Nast Publ'ns v. Vogue Sch. Of Fashion Modelling, Inc.,* 105 F. Supp. 325 (S.D.N.Y. 1952), the Court stated:

> Although the defendants in their use of plaintiff's copyrighted material were not attempting to advance it as the product of their own genius and effort, or to offer it for sale, and their use did not result in prejudice or diminution of plaintiff's profits, we find that the copying was not the reasonable use which in the interests of progress the law permits under the "fair use" theory. […] Although the defendants may have lacked the intention to deliberately infringe, the purpose of the copying was to promote their business with the aid of an attractive catalogue and the prestige of plaintiff's magazines.

### F) *Even if Defendants' unauthorized uses had enhanced the images' value, which they did not, such fact would be irrelevant to a fair use analysis.*

Defendants argue that their unauthorized uses of the images enhance their value. Plaintiff disagrees. As demonstrated above, Defendants' unauthorized uses of the images have a detrimental effect on them and their value.

In any case, even if Defendants' premise were accepted, it is irrelevant to this fair use analysis. In *A&M Records v. Napster, Inc.*, 239 F.3d 1004, at 1018 (9th. Cir. 2001), the court said that "any potential enhancement of plaintiffs' sales . . . would not tip the fair use analysis conclusively in favor of defendant." "We agree that increased sales of copyrighted material attributable to unauthorized use should not deprive the copyright holder of the right to license the material." (Internal citations omitted). *Id.* "Nor does positive impact in one market, here the audio CD market, deprive the copyright holder of the right to develop identified alternative markets, here the digital download market." *Id.* (Internal citation omitted). *See also Campbell*, 510 U.S. at 591 n.21 "Even favorable evidence, without more, is no guarantee of fairness. Judge Leval gives the example of the film producer's appropriation of a composer's previously unknown song that turns the song into a commercial success; the boon to the song does not make the film's simple copying fair."

In *Arista Records LLC v. Myxer Inc.*, LEXIS 109668 (C. D. Cal. 2011), defendants argued that their use of Plaintiff's music was fair because it did not harm the market since:

> Plaintiffs derive benefit from the exposure. Ringtones are no substitutes for the whole song, and therefore cannot harm the market for those songs. However, "it is undisputed that there is an existing market for the sale of the very products — ringtones of Plaintiff's popular sound recordings — that Myxer gives away for free (and sometimes sells).

The court concluded that "because it arguably harms an existing market for the sale of ringtones, which Plaintiff has entered, this final factor weighs against finding fair use." Likewise, Defendants' unauthorized uses harm Magnum Photos' existing market for the Images and exhibitions featuring them.

### III)   MAGNUM PHOTOS' OBJECTION TO DEFENDANTS' SUBMISSION OF THIRD PARTY AFFIDAVITS

Magnum Photos objects to Defendants' submission of and reliance on the affidvits of third party witnesses for their summary judgment motion, [1] including for their proffered "industry custom" argument. The limited stipulated and ordered document and information exchange between the parties prior to the filing of the instant motion for summary judgment on the issue of fair use did not contemplate the identification of third party witnesses or any opportunity to depose and examine such witnesses. Indeed, apart from the limited discovery exchange agreed by the parties, all discovery in this action has been stayed pending the Court's resolution of the instant summary judgment motion. *See* this Court's May 8, 2017 Order (Document 29). The Court should afford no or *de minimis* evidentiary weight to such Affidavits in the context of Defendants' summary judgment motion.

Moreover, to the extent that such third party testimony even is deemed relevant to the fair use analysis, which Magnum Photos denies, Defendants' introduction of these affiants' statements itself creates genuine issues of material fact because Plaintiff has not yet examined these witnesses to probe and test their statements. Conspicuously, the affiants do not deny having taken or accepted licenses for exhibitions in the past, nor do they acknowledge the commercial benefits of doing so, nor do they even confirm that they are familiar with the particular unauthorized uses committed by Defendants in the instant case. Several of the third party affiants stand to benefit from a ruling by this Court immunizing from infringement claims the unauthorized conduct in which they claim they routinely engage. In addition, Mr. Erwitt does not and is not authorized to speak for Magnum Photos. Mr. Erwitt's brief tenure as an officer of Magnum Photos nearly five decades ago is not probative of its current policies

---

[1] These are the Affidavits of Stephen Daiter dated July 31, 2017 (Document 31-2); Elliott Erwitt dated July 31, 2017 (Document 31-3); Robert Mann dated August 1, 2017 (Document 31-4); and Bruce Silverstein dated August 1, 2017 (Document 31-5).

and protocols, and Magnum Photos disputes and rejects his personal view expressed. Crooks Aff. ¶ 25.

## CONCLUSION

Because Defendants' unauthorized uses of the images do not constitute fair use, and because Defendants also failed to carry their burden under Rule 56, Plaintiff respectfully requests that Defendants' motion for summary judgment be denied. Indeed, if any judgment can be reached at this stage of the proceeding, it is that fair use is inapplicable to Defendants' unauthorized uses.

DATED: Pelham, New York                    Respectfully submitted,

November 10, 2017


BRESSLER LAW PLLC

By: /s/ Joshua R. Bressler
     Joshua R. Bressler (JB8780)
     3 West 35th Street, 9th floor
     New York, NY 10001
     Tel: (917) 969-4343
     Fax: (917) 591-7111
     Email: jrb@jrblaw.com

     *Counsel for Plaintiff*
     *Magnum Photos International, Inc.*

## CERTIFICATE OF SERVICE

I, Joshua R. Bressler, Manager of Bressler Law PLLC and an attorney admitted to practice law in the State of New York and in this Federal district, hereby certify that today the following documents were filed with the Clerk of the Court using its CM/ECF system:

- Plaintiff Magnum Photos International, Inc.'s Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment;

- Statement of Material Facts In Opposition to Defendants' Motion for Summary Judgment;

- Affidavit of Hamish Crooks in Support of Magnum Photos' Opposition to Defendants' Motion for Summary Judgment, dated November 10, 2017;

- Declaration of Deborah Hrbek, Esq. in Support of Magnum Photos' Opposition to Defendants' Motion for Summary Judgment, dated November 10, 2017; and

- Declaration of Anna S. Klein in Support of Magnum Photos' Opposition to Defendants' Motion for Summary Judgment, dated November 10, 2017,

which filing effects service thereof on counsel of record for Defendants who have appeared and consent to electronic filing in this action, namely:

> David S. Korzenik, Esq. (email: dkorzenik@mkslex.com)
> Mona Houck, Esq. (email: mhouck@mkslex.com)
> Terence Keegan (email: tkeegan@mkslex.com)
> Miller Korzenik Sommers LLP
> 488 Madison Avenue, Suite 1120
> New York, New York 10022-5702

Dated:      Pelham, New York
            November 10, 2017

> By: /s/ Joshua Bressler
>      Joshua R. Bressler (JB8780)
>      3 West 35th Street, 9th Floor
>      New York, NY 10001
>      Tel: (917) 969-4343
>      Fax: (917) 591-7111
>      Email: jrb@jrblaw.com