UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
          :
MAGNUM PHOTOS INTERNATIONAL,  :
INC.,          :
          :
         Plaintiff,  :    16-CV-7030 (VSB)
          :
    - against -  :    **OPINION & ORDER**
          :
HOUK GALLERY, INC. and EDWYNN  :
HOUK GALLERY,  :
          :
         Defendants.  :
         :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/2018

Appearances:

Joshua Ron Bressler
Bressler Law PLLC
New York, New York
*Counsel for Plaintiff*

David S. Korzenik
Terence Patrick Keegan
Miller Korzenik Sommers
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Magnum Photos International, Inc. ("Plaintiff" or "Magnum") brings this action against Defendants Houk Gallery, Inc. and Edwynn Houk Gallery (collectively, "Gallery" or "Defendants") for direct and indirect copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.* Plaintiff alleges that, without authorization or consent, Defendants reproduced, distributed, and transmitted certain photographs created by French humanist photographer Henri Cartier-Bresson. Before me is Defendants' motion for summary judgment.

Because Defendants' use of the Cartier-Bresson photographs was a fair use and therefore not an infringement, Defendants' motion for summary judgment is GRANTED.

I. **<u>Factual Background and Procedural History</u>**[1]

The facts of this case are simple and undisputed. From March 12 to May 2, 2009 and September 12 to November 2, 2013, the Gallery staged two exhibitions of Cartier-Bresson photographs (the "Images") in New York and Zurich, respectively. (Resp. to Pl's 56.1 ¶¶ 4–7.)[2] Every work displayed at these exhibitions was lawfully for sale. (*Id.* ¶ 8.) The Gallery announced these exhibitions on its website, where it displayed uncropped "thumbnails"—*i.e.*, small, low-resolution versions—of the Images for sale. (*Id.* ¶ 9.)

On September 8, 2016, Plaintiff initiated this action by filing its Complaint, alleging that the Gallery's posting of the Images on its website infringed on Plaintiff's copyright interests. (Doc. 1.) On April 12, 2017, Defendants answered the Complaint. (Doc. 24.) On May 8, 2017, the parties agreed to conduct limited discovery on the fair use issue and to stay all other discovery until Defendants' motion for summary judgment on this issue was resolved. (Docs. 28–29.)

On September 28, 2017, Defendants filed their motion for summary judgment, (Doc. 34), Rule 56.1 statement of material facts, (Doc. 35), as well as a memorandum of law and declarations in support of their motion, (Docs. 36–41). On November 10, 2017, Plaintiff filed its opposition, (Doc. 45), counterstatement to Defendants' Rule 56.1 statement of material facts, (Doc. 50), and declarations in support of its opposition, (Docs. 46–48). On December 22, 2017,

---

[1] The following facts are taken from the parties' submissions under Rule 56.1 and are undisputed unless otherwise noted.

[2] "Resp. to Pl.'s 56.1" refers to Defendants' Response to Plaintiff Magnum Photos' Counterstatement of Facts, filed December 22, 2017. (Doc. 56.)

2

Defendants filed their reply, (Doc. 54), and an affidavit in support of their reply, (Doc. 55). Defendants also filed a response to Plaintiff's counterstatement to Defendants' Rule 56.1 statement of material facts. (Doc. 56.)

## II. **Legal Standards**

### A. *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### B. *The Copyright Act*

Under 17 U.S.C. § 106, "the owner of copyright . . . has the exclusive rights to . . . authorize" the reproduction, distribution and preparation of derivatives of the owner's work. To establish copyright infringement, a plaintiff must show that he or she had ownership of a valid copyright and that another party copied "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Certain uses of copyrighted works are considered "fair use" and will not amount to copyright infringement. *See* 17 U.S.C. § 107 ("Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work . . . is not an infringement of copyright."). To determine whether a use qualifies as a fair use, courts consider four factors: (1) the purpose and character of the use, (2) the nature of the work, (3) the amount and substantiality of the portion

4

used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of copyrighted work. *See id.* "The task is not to be simplified with bright-line rules," and "the statute . . . calls for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994); *see also Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 41 (S.D.N.Y. 2017) ("No single factor is categorically determinative in this 'open-ended and context-sensitive inquiry.'" (quoting *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006))).

### III. Discussion

Defendants move for summary judgment on the issue of fair use, arguing that because their use of the Images was a fair one, they did not infringe on any of Plaintiff's copyrights. I consider each of the four factors to determine whether Gallery's use qualifies as a fair use.

#### A. *The Purpose and Character of the Use*

"The first statutory factor in the fair-use inquiry is 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.'" *Blanch*, 467 F.3d at 251 (quoting 17 U.S.C. § 107(1)). The focus of this factor is whether the use "merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character." *Campbell*, 510 U.S. at 579 (citation and internal quotation marks omitted). "[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015). For example, courts have held that the use of thumbnails—including copyrighted photographs—to facilitate internet searches is transformative. *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1168 (9th Cir. 2007); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818–20 (9th Cir. 2003); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d

5

606, 609–11 (2d Cir. 2006) (holding that display of images of posters in 480-page cultural history of the Grateful Dead was transformative, explaining that "[w]hile the small size [of the images of the posters] is sufficient to permit readers to recognize the historical significance of the posters, it is inadequate to offer more than a glimpse of their expressive value").

Here, the Gallery displayed uncropped versions of the Images on its website. The uncropped versions were thumbnails—small, low-resolution images—of the Cartier-Bresson photographs. The parties do not dispute that the Gallery's purpose in copying the Images and putting them on its website was to provide individuals searching for Cartier-Bresson works with enough information to know whether they wanted to buy the work. (Resp. to Pl's 56.1 ¶ 9.) Plaintiff does not claim—nor could it—that the displaying and offering for sale of the Images constituted infringement. The Gallery is authorized to sell the Cartier-Bresson works by the owners of the prints. (Houk Decl. ¶ 7.)[3]

I find that the Gallery's use of the Images was transformative. The Gallery used the Images in a different manner and for a different purpose than that of the original Cartier-Bresson photographs: to identify the photographs online to viewers interested in the fine art photography market. The Gallery also provided biographical description of Cartier-Bresson, and also described the historical and cultural significance of the Images. The Gallery's posting thumbnails of the Images does not usurp the purpose of the original Cartier-Bresson photographs and does not duplicate the artistic purpose of those originals; the thumbnails merely provide information to the art-seeking public.

Plaintiff argues that the Gallery's use of the Images was "clearly commercial" and

---

[3] "Houk Decl." refers to the Declaration of Edwynn Houk in Support of Defendants' Motion for Summary Judgment, filed September 18, 2017. (Doc. 37.)

therefore the first factor weighs against a finding of fair use. (Pl.'s Opp. 5–7.)[4] Specifically, Plaintiff contends that the Gallery publicly displayed thumbnails of the Images for private commercial gain—to promote the exhibitions and sell the Images. As an initial matter, the Supreme Court has clarified that the commercial nature of the use is only one consideration in the first factor of § 107. *See Campbell*, 510 U.S. at 584 ("The language of the statute makes clear that the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character."). Moreover, the cases on which Plaintiff relies are distinguishable from this case, where the Gallery has lawful rights to ultimately sell the Images, and only posted thumbnail copies of those images to point to the availability of the Images for viewing and/or purchase and not sell the thumbnail copies. Thus, the commercial activity that Plaintiff criticizes is the lawful sale of the Images, and it has little bearing on the fair use analysis in this context. *See id.* at 579 (noting that "the more transformative the new work, the less will be the significance of other factors, like commercialism").

I conclude that the first factor weighs heavily in favor of a finding of fair use.

    **B.**    *The Nature of the Work*

The second statutory factor looks at the nature of the copyrighted work itself and its expressive content. *See* 17 U.S.C. § 107(2). The Second Circuit has acknowledged that this factor "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild*, 804 F.3d at 220. Cartier-Bresson photographs are highly creative works of art, and Defendants concede that the Images are "indisputably deserving of copyright protection."

---

[4] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed November 10, 2017. (Doc. 45.)

7

(Defs.' Mem. 6.)[5] However, the Gallery's transformative use of the Images does not take away from other artists' incentive to create, which is a central purpose of copyright law. I thus conclude that the second factor weighs against a finding of fair use, but note that this factor plays less of a role in my determination given the transformative nature of the Gallery's use of the Images and the policy underlying copyright law.

### C. *The Portion of the Work*

The third statutory factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor compares the portion of the use with the copyrighted work as a whole, with the goal of determining if it is "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Analysis of this factor "calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Id.* at 587.

Here, the Gallery's purpose in copying the Images was to identify the Images so that the art-seeking public could decide whether to buy them or view them in person. In so doing, the Gallery posted uncropped versions of the Images, which on its face indicates that the Gallery used a large portion of the image in relation to the copyrighted work as a whole. However, the Gallery's use of uncropped versions was not only reasonable but necessary—posting the Images in their entirety allowed viewers to recognize the photographs in order to determine whether they were interested in purchasing the Images or viewing them in person. In similar contexts, courts have found the use of a full image reasonable in light of the purpose behind that use. *See Kelly*, 336 F.3d at 821 ("It was necessary for Arriba to copy the entire image to allow users to

---

[5] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed September 18, 2017. (Doc. 36.)

8

recognize the image and decide whether to pursue more information about the image or the originating web site."). Additionally, use of the uncropped version in this case is not the equivalent of a full-scale reproduction of the Images. Plaintiff does not, and cannot, argue that the small, low-resolution versions of the Images are equivalent to the high-quality gelatin silver prints. The Gallery's use of the Images was not a substitute for the original fine art prints, and was only meant to provide enough information for viewers to assess what originals were available for purchase. Plaintiff concedes that the thumbnail version of the Images were not substitutes for the original fine art prints by describing the thumbnail versions on the Gallery's website as "'piled together, crowded next to each other like random postage stamps, without their titles or any other information, and without any order or explanation for why they were arranged, hardly in any presentation worthy or dignifying of Mr. Cartier-Bresson's work.'" (Pl.'s Opp. 10.) In other words, no member of the public would view the thumbnail versions of the Images as substitute.

On balance, I conclude that the third factor weighs slightly in favor of a finding of fair use. Although the Gallery used uncropped versions of the Images, the uncropped images were small, low-resolution thumbnails, and its use was reasonable in light of the Gallery's purpose in copying the Images.

### D. *The Potential Market for or Value of the Work*

The fourth statutory factor evaluates the effect of the use on the market for or the value of the original work. *See* 17 U.S.C. § 107(4). Courts look here not for theoretical or speculative harm, but for copying of "sufficiently significant portions of the original as to make available a significantly competing substitute." *Authors Guild*, 804 F.3d at 223. The focus is whether the use would "deprive the rights holder of significant revenues because of the likelihood that

potential purchasers may opt to acquire the copy in preference to the original." *Id.*

As noted above, the thumbnail versions of the Images posted on the Gallery's website were no substitute for the original works. Neither the size nor the quality of the thumbnails are similar to that of the original Images, and no reasonable buyer would consider the internet thumbnail images a significantly competing substitute for an actual Cartier-Bresson gelatin silver print. Because they are not a substitute for the full-size originals, they cannot cause harm to the market for those Images.

Plaintiff's opposition does not identify a separate market for the thumbnail versions of the Images, nor does it provide any evidence of the market effect of the Gallery's posting of the Images. Although Plaintiff expresses concern that digital copies "cheapen the work" and "damage[] the [I]mages' prestige," it provides no evidence that Plaintiff's concern is a reality.[6] Instead, Plaintiff argues that the Gallery usurped its role as an "exhibition licensing business." (Pl.'s Opp. 14.) Plaintiff contends that galleries routinely pay fees to have Plaintiff manage their exhibits, taking issue with the manner in which the Gallery posted and arranged the thumbnails of the Images on its website. Plaintiff's argument misses the mark. The fourth factor of the fair use analysis looks at harm to the market for the copyrighted works themselves, not the exhibition services of which Plaintiff complains.

Accordingly, I conclude that the fourth factor weighs in favor of a finding of fair use.

### E.  *Overall Assessment*

The four non-exclusive statutory factors discussed above are to be weighed together, along with any other relevant considerations, in light of the goals of copyright laws. *See Authors*

---

[6] By utilizing the thumbnail versions of the Images, Defendants facilitated the sale of the Images to the art-seeking public. Such use cannot be viewed as cheapening the original photographs.

10

*Guild*, 804 F.3d at 225. "The ultimate goal of copyright is to expand public knowledge and understanding, which copyright seeks to achieve by giving potential creators exclusive control over copying of their works, thus giving them a financial incentive to create informative, intellectually enriching works for public consumption." *Id.* at 212. Overall, I find that Defendants' use of the Images was a fair use and does not infringe on Plaintiff's copyrights in the Images. Because there are no disputed issues of material fact[7] and Defendants' use of the Images qualifies as a fair one, Defendants' motion for summary judgment is granted and Plaintiff's claims are dismissed.

IV. **Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment for Defendants, terminate the pending motion, (Doc. 34), and close this case.

SO ORDERED.

Dated: September 21, 2018
      New York, New York

Vernon S. Broderick
United States District Judge

---

[7] Plaintiff argues that Defendants are not entitled to summary judgment because there are genuine issues of material fact. Curiously, however, Plaintiff does not point to a single fact in dispute—material or otherwise. Plaintiff instead states that "[e]ach of the four fair use factors is outcome determinative, since they could all lead to a finding of fair use, and therefore constitute issues of 'material fact.'" (Pl.'s Opp. 4.) In other words, Plaintiff appears to argue that fair use cases cannot be decided on summary judgment. Plaintiff is incorrect. Although fair use inquiries involve a mixed question of law and fact, such determinations are often resolved at the summary judgment stage. *See Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1258 (2d Cir. 1986) (collecting cases). Moreover, Plaintiff fails to identify any specific genuine issue of material fact. Accordingly, I reject Plaintiff's argument that Defendants' motion should be denied on this basis.